UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| LARRY J. ALSTON, | ) | |
|---|---|---|
| | ) | Case No. 3:19-cv-234 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| KEVIN GENOVESE, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Petitioner Larry J. Alston, an inmate proceeding *pro se*, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254, challenging the legality of his confinement under Knox County, Tennessee convictions for especially aggravated kidnapping, aggravated burglary, and aggravated robbery. Having considered the submissions of the parties, the state-court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied.

## I. SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Carolyn Sue Maples was in front of her Knoxville residence on the afternoon of April 15, 2010, when three armed men confronted her, demanded her purse, and ordered her inside her home. *State v. Alston, Young, and Webb*, No. E2012-00432-CCA-R3-CD, 2013 WL 2382589, at *1 (Tenn. Crim. App. May 30, 2013) ("*Alston I*"), *perm. app. granted* (Tenn. Jan. 17, 2014). A neighbor witnessed the incident and telephoned police. *Id*. Petitioner and his co-defendants were apprehended at the victim's residence. *Id*.

The following evidence was presented at trial. Ms. Maples's neighbor, Ashley Dawn Hill, testified that, at approximately 1:45 p.m. on April 15, 2010, she was sitting on the front

porch when she saw two black men with dreadlocks and a white man with glasses walking down the street toward the victim's residence. *Id*. Ms. Hill witnessed the victim walk around her car, which was parked in front of Ms. Hill's house, to get in the vehicle. *Id*. The men approached the victim and said, "Excuse me." *Id*. Ms. Hill heard the victim scream and saw one of the black men grab the victim's purse. *Id*. The victim got out of her car and ran toward her house, and the men followed her inside. *Id*. Ms. Hill telephoned 9-1-1. *Id*.

Ms. Maples testified that, at approximately 1:45 p.m. on April 15, 2010, she went outside to get in her car when she saw three men — two black and one white — walking toward her. *Id*. She stated that, just as she began to get into her car, the "big" black man asked if she knew a particular girl. *Id*. Ms. Maples stated that she did not and went to get in the car. *Id*. She testified, "The next thing I know[,] there were guns to my head." *Id*.

Ms. Maples stated that the two black men pointed guns at her, and that one of the men demanded that she give him her purse and then "get to the house." *Id*. She stated that the men pushed her toward the door of the home, which she had difficulty opening due to her terror. *Id*. Once inside the home, the men pushed her to the couch and began ransacking her home for money, jewelry, and "anything [she] had." *Id*. She testified that the men took $140 from her wallet, along with her bank card. *Id*. She stated that "the big" perpetrator demanded her "bank number." *Id*. Ms. Maples also recalled that the white perpetrator had a sawed-off shotgun stuffed down his pants, while the two black men had pistols. *Id*.

While Ms. Maples remained on the couch, one of the men took two flat screen televisions and walked to the door before stating, "Oh f***, there's the law." *Id*. at 2. The man ran toward another man in the kitchen, at which point Ms. Maples escaped through the open front door. *Id*. When she got outside, a female officer told her to "[g]o somewhere and . . . get where nobody

2

can see you." *Id*. She identified Petitioner and his co-defendants as the perpetrators at trial, designating Defendant Kris Young as "the big one." *Id*.

Knoxville Police Department ("KPD") Officer Amanda Bunch testified that, at approximately 1:41 p.m., she responded to the victim's residence to investigate a report that "three males force[d] a lady back into her house at gunpoint." *Id*. Officer Bunch took position near the home and waited for backup to arrive. *Id*. Two other officers arrived nearly simultaneously to one another and, at that point, the front door opened and a black male carrying a television began to exit. *Id*. Officer Bunch saw the individual drop the television and run back into the house. *Id*. She testified that the other two officers went to the back of the house while she moved to the driveway of the residence. *Id*.

Officer Bunch stated that the other officers placed one subject in custody at the back of the house. *Id*. An officer and his police dog arrived, and the dog was released inside the home. *Id*. The dog drove the other two suspects onto the back deck, where they were placed into custody. *Id*. Officer Bunch handcuffed a white male, identified as Joshua Webb, and performed a search of his person, where she discovered "[t]wo five-dollar bills, a lighter, his wallet, . . . a gold kind of bracelet chain type thing, and . . . a pill bottle" with the victim's name on it. *Id*.

KPD Officer Tim Riddle was another of the responding officers, and he testified that he took cover next to a tree where he could see both the front and rear exits of the victim's home. *Id*. Officer Riddle observed a black male carrying something out of the home, and he saw the individual drop what he was carrying and go back in the house when the officers "began to give verbal commands." *Id*. He then saw an elderly white woman run from the front door and a black male "trying to run out the back door." *Id*. That man was apprehended by Officer John Stevens, who was in the back alley. *Id*. Officer Riddle radioed for K-9 assistance, and after the

K-9 officer arrived and warned the home's occupants that the dog was going to be released, a white male and a black male exited the rear of the home and surrendered. *Id*. Officer Riddle placed the second black male, identified as Kris Young, into custody. *Id*.

KPD Officer John Stevens, another responding officer, recalled that Petitioner was the first to exit the victim's home, followed quickly by Webb and Young. *Id*. at *3. Petitioner cooperated with officers' commands and got down on the ground immediately. *Id*. Officer Stevens placed Petitioner in custody and searched him, finding $110 in cash and the victim's automatic teller machine ("ATM") card on his person. *Id*.

A KPD forensic officer took photographs and collected evidence at the scene, which included a Ruger pistol, a nine-millimeter pistol, and a .20-gauge sawed-off shotgun, all of which were loaded. *Id*.

At the conclusion of the State's proof, Petitioner and his co-defendants elected not to present any proof. *Id*. A Knox County Criminal Court jury convicted Petitioner of aggravated robbery, aggravated burglary, especially aggravated kidnapping, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. (*See* Doc. 5-6, at 91–92.) Following the verdict, the trial court set aside the guilty verdicts for especially aggravated kidnapping and aggravated burglary. (*See* Doc. 5-2, at 57–59, 69–70.) The trial court also dismissed the firearms convictions, reasoning that the firearms convictions could not survive the dismissal of the especially aggravated kidnapping and aggravated burglary convictions, as they were the predicate dangerous felonies for the firearms offenses. (*See* Doc. 5-7, at 21); s*ee also Alston I*, 2013 WL 2382589, at *3. The State appealed, and the Tennessee Court of Criminal Appeals ("TCCA") reversed and reinstated the verdicts. *Alston I*, 2013 WL 2382589, at *1.

Petitioner sought and was granted discretionary review by the Tennessee Supreme Court ("TSC"), and the TSC remanded the case back to the TCCA for consideration in light of *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013). (Doc. 5-22.) On remand, the TCCA reached the same result. *State v. Alston, Young, and Webb*, No. E2012-00431-CCA-R3-CD, 2014 WL 585859 (Tenn. Crim. App. Feb. 13, 2014) ("*Alston II*"), *perm. app. granted* (Tenn. Jun. 20, 2014).

Petitioner again sought discretionary review by the TSC, which was again granted. (Doc. 5-26.) After review, the TSC affirmed the TCCA's conclusions and reinstated Petitioner's convictions for especially aggravated kidnapping and aggravated burglary and remanded the case for resentencing. *State v. Alston, Young, and Webb*, 465 S.W.3d 555, 568 (Tenn. 2015) ("*Alston III*"). Upon resentencing, Petitioner was sentenced to an effective sentence of twenty years' imprisonment. (*See* Doc. 1, at 1.)

On May 2, 2016, Petitioner filed a *pro se* petition for post-conviction relief that he later amended twice with the assistance of appointed counsel. (Doc. 6-2, at 4–36, 45–47, 48–49.) Following a hearing, the post-conviction petition was denied. (*Id*. at 86–88.) The TCCA affirmed the post-conviction court's decision on November 27, 2018. *Alston v. State*, No. E2017-02528-CCA-R3-PC, 2018 WL 6992435 (Tenn. Crim. App. Nov. 27, 2018) ("*Alston IV*"), *perm. app. denied* (Tenn. Mar. 27, 2019). The TSC denied discretionary review. (Doc. 6-14.)

On June 24, 2019, Petitioner filed the instant federal habeas petition, raising the following claims, paraphrased:

> Ground 1: Whether the denial of a jury instruction pursuant to *State v. White*, 362 S.W. 3d 559 (Tenn. 2012), was harmless beyond a reasonable doubt.
>
> Ground 2: Whether Petitioner's convictions for especially aggravated kidnapping and aggravated burglary violated the Double Jeopardy Clause.

5

> Ground 3: Whether the evidence was sufficient to convict Petitioner of especially aggravated kidnapping.

(Doc. 1.) The Court ordered Respondent to respond to the petition, and Respondent complied on August 22, 2019. (Doc. 7.) After obtaining an extension of time, Petitioner filed a reply to the response, along with a motion to amend his petition to add a legal argument. (*See* Docs. 11–14.) Respondent failed to respond to the motion to amend, which the Court granted by order entered on November 19, 2019. (Doc. 15.) This matter is now ripe for review.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a state court unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1), (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407–08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473; *see Williams*, 529 U.S. at 410–11.

6

This standard will allow relief on a federal claim decided on its merits in state court only where the petitioner demonstrates that the state ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding that prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731–32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause for the default and actual resulting prejudice, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that trial counsel rendered ineffective assistance. *Coleman*, 501 U.S. at 753–54. The prejudice demonstrated to overcome the default must be actual, that is, the error must have "worked to [Petitioner's] *actual* and substantial disadvantage, infecting his entire [proceeding] with error of

7

constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

As noted above, ineffective assistance of counsel can serve as "cause" for a defaulted claim. *Coleman*, 501 U.S. at 753. In contrast, errors of post-conviction counsel cannot generally serve as "cause" to excuse a procedural default. *Id.* at 752. An exception to this rule was established in *Martinez v. Ryan*, 566 U.S. 1 (2012), which held that inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Id.* at 9. The Supreme Court has described the requirements of the *Martinez* exception:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13–14, 16–17).

## III. DISCUSSION

### A. Jury Instruction

As to his first ground for federal habeas relief, Petitioner argues that the trial court erred by not issuing a jury instruction pursuant to *State v. White*, 362 S.W.3d 559 (Tenn. 2012). (Doc. 1, at 5.) Specifically, Petitioner argues that his jury was not instructed, pursuant to *White*, "that, in order to convict the defendant of the kidnapping offense, it must find that the State proved beyond a reasonable doubt the removal or confinement was to a greater degree than that

8

necessary to commit the accompanying felony." (*Id.* at 5.) Petitioner contends that the proof in this case demonstrates that any alleged kidnapping of the victim was incidental to the commission of the robbery, not separate from it. (*Id.* at 6.)

Petitioner's claim of error relies on a misapplication of state law. However, there is no general federal right to a properly instructed jury; jury instructions are ordinarily a state-law issue. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). As such, errors in jury instructions in a state-court trial do not warrant federal habeas relief unless the incorrect or omitted instruction denies a petitioner a fundamentally fair trial by "so infect[ing] the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. 72–73 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The category of errors that violate fundamental fairness has been narrowly defined by the United States Supreme Court, which has noted that an omitted or incomplete instruction "is less likely to be prejudicial than a misstatement of the law." *Kibbe,* 431 U.S. at 155.

In this case, the Court finds that Petitioner was not denied a fundamentally fair trial by the failure to provide the challenged instruction, as the State presented sufficient evidence showing that Petitioner's removal and confinement of the victim was beyond that necessary to accomplish the aggravated robbery. *See Alston III*, 465 S.W.3d at 567. The aggravated robbery indictment specified the taking of the victim's purse, and once that action was taken, the aggravated robbery was complete. *Id*. Thereafter, Petitioner committed kidnapping by ordering the victim into her house and confining her to her couch. *Id.* Accordingly, the Court finds that

Petitioner's claim is not cognizable on federal habeas review, as it relies upon an alleged error of state law, and the Court otherwise determines that the denial of the challenged instruction did not deprive Petitioner of due process.

### B. Double Jeopardy

In his second federal habeas claim, Petitioner asserts that his convictions for especially aggravated kidnapping and aggravated burglary violate the United States Constitution's guarantee against double jeopardy, because "the chain of events never broke from the initiating felony (Aggravated Robbery)" and, therefore, "the subsequent entering of the house and gathering of the victim[']s belongings and aggravated kidnapping are all incidental to the accompanying felony." (Doc. 1, at 8.)

Petitioner did not raise this claim on direct appeal. (*See* Doc. 5-15, at 3, 7, 13–22.) Rather, on direct appeal, he raised a similar argument challenging his convictions for aggravated burglary and aggravated robbery as violative of double jeopardy. (*Id.*) Thereafter, Petitioner did argue his federal habeas claim to the post-conviction trial court (*see* Doc. 6-2, at 10–12), but he failed to carry his double-jeopardy claim forward on appeal to the TCCA after the post-conviction petition was denied. (Doc. 6-7, at 2.)

To satisfy the AEDPA's exhaustion requirement, a claim must be "fairly presented" to the state's highest court so that the appellate court has a "fair opportunity" to address the constitutional claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–47 (1999). In Tennessee, a claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). The claim of double jeopardy that Petitioner raises on federal habeas review relies upon a different theory than that

10

which was presented on direct appeal to the TCCA. *See Prather v. Rees*, 822 F.2d 1418, 1420–21 (6th Cir. 1987) (holding federal claim must be presented on same legal theory that was presented in state court for proper exhaustion). Therefore, by failing to present his federal habeas claim to the TCCA, Petitioner failed to properly exhaust it. *See O'Sullivan,* 526 U.S. at 845 (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process").

Petitioner would now be barred from presenting his federal habeas claim to the TCCA, and, therefore, the claim is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule), and § 40-30-117 (requirements for reopening postconviction actions). In his amended petition, Petitioner argues that he can demonstrate "cause" for the default of this claim, as his post-conviction attorney failed to raise it. (Doc. 16, at 1]. Under *Martinez*, ineffective assistance of post-conviction counsel may provide cause to excuse the default of certain claims. 566 U.S. at 9. However, the *Martinez* exception is limited to substantial and defaulted claims of ineffective assistance of trial counsel. *Id.* at 16; *see also Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017). Accordingly, *Martinez* has no application to Petitioner's double-jeopardy claim. The Court additionally finds that there is no cognizable cause for Petitioner's default or demonstration of resulting prejudice. Therefore, this claim is procedurally defaulted and barred from review. *See Coleman*, 501 U.S. at 750.

Even in the absence of a procedural default, Petitioner's double-jeopardy claim is without merit. The Double Jeopardy Clause of the Fifth Amendment, which applies to the states through

11

the Fourteenth Amendment, provides that a person may not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amends. V, XIV; *see also Benton v. Maryland*, 395 U.S. 784, 794 (1969) (holding Double Jeopardy Clause of Fifth Amendment applies to the States through the Fourteenth Amendment). It protects, among other things, "against multiple punishments for the same offense" in a single proceeding. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) (citation omitted). The test to determine whether the punishment of one course of conduct under two different statutes violates double jeopardy is whether each provision requires proof of a fact which the other does not. *Id*. (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). The offenses of especially aggravated kidnapping and aggravated burglary unquestionably require proof of at least one different fact, as especially aggravated kidnapping requires that a defendant knowingly move or confine another so as to interfere with the other's liberty, which is not an element of aggravated burglary. *Compare* Tenn. Code Ann. §§ 39-13-302, 39-13-305 (elements of especially aggravated kidnapping), *with* Tenn. Code Ann. §§ 39-14-402, 39-14-403 (elements of aggravated burglary). Because the elements of the offenses do not completely overlap, there was no double-jeopardy violation in this case. Accordingly, the Court finds this claim procedurally defaulted and otherwise without merit.

      **C.**    **Sufficiency of Evidence**

Finally, Petitioner claims that the "prosecution failed to prove all the elements of especially aggravated kidnapping beyond a reasonable doubt." (Doc. 1, at 11–14.) Petitioner concedes that this claim has never been presented to the state courts. (*Id*. at 11.)

Because this federal habeas claim has never been presented to the TCCA, and he is now incapable of presenting this claim to the TCCA, the claim is technically exhausted but

procedurally defaulted. *See Jones*, 696 F.3d at 483 ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period); *id.* § 40-30-102(c) ("one petition" rule); *id.* § 40-30-117 (requirements for reopening postconviction actions).

In his amended petition, Petitioner argues that he can demonstrate "cause" for the default of this claim, as his attorneys failed to raise it. (Doc. 16, at 1–2.) As the Court noted above, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of a substantial ineffective-assistance-of-trial-counsel claim, but only for substantial and defaulted claims of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9, 16; *see also Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017). Accordingly, *Martinez* has no application to Petitioner's claim regarding the sufficiency of the evidence, and it is procedurally defaulted and barred from review. *See Coleman*, 501 U.S. at 750.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**